

DA 06-0552

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 416

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

STEPHEN SAMPLES,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 02-0590
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Attorney General; Mark W. Mattioli, Assistant
Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney; Mark Murphy, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  October 31, 2007

Decided:  December 11, 2008

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Stephen Samples pled guilty to the offense of failure to register as a sex offender in the Thirteenth Judicial District Court, Yellowstone County. With the consent of the Yellowstone County Attorney and the District Court, Samples reserved the right to appeal the District Court's previous denial of a petition to change his level 3 sexual offender designation and to dismiss the information on constitutional grounds. Judgment was entered and Samples now appeals from the denial of his petition.

¶2 Samples raises numerous issues, which we restate as follows:

¶3 Issue 1: Is the provision of the Sexual and Violent Offender Registration Act (2001 Act) requiring an offender to report a change of residence void for vagueness?

¶4 Issue 2: Does the provision of the 2001 Act requiring an offender to report a change of residence demonstrate Samples did not commit a crime?

¶5 Issue 3: Did the 1999 version of the Sexual and Violent Offender Registration Act (1999 Act) as applied to Samples deprive him of his constitutional right to due process of law because the Department of Corrections (DOC) set his sexual offender risk level without notifying him or giving him an opportunity to contest the designation?

¶6 Samples avers other constitutional violations. However, because we conclude that Issues 1 through 3 are dispositive, we do not address the remaining issues Samples raises.

## BACKGROUND

¶7 In 1989, Samples pled guilty to one count of sexual assault. He was sentenced to serve ten years at Montana State Prison, with all but the first thirty days suspended.

2

¶8     That same year, 1989, the Montana Legislature enacted the Sexual Offender Registration Act (amended and re-titled in 1995 as the Sexual or Violent Offender Registration Act) requiring convicted sex offenders to register in the county where they live. The Act also requires offenders to be assigned a risk level, level 1, 2, or 3, indicating how likely they are to re-offend. Level 3 offenders are considered at a high risk of re-offending and have the strictest registration requirements. Section 46-23-509(2)(c), MCA (2001). The Act requires all registered offenders to inform authorities of any changes in their address.

¶9     In 1998, the District Court revoked Samples's suspended sentence and committed him to the DOC for five years. He discharged his sentence in 2000. Upon his discharge, as Samples had not been assigned a risk level by the District Court, DOC designated him a level 3 sexual offender pursuant to § 46-23-509(5), MCA (1999). He did not receive any notice that DOC intended to designate him a level 3 offender and did not have an opportunity to see or contest the data DOC relied on to designate him a level 3 offender.

¶10    Samples updated his registration each time he changed his address until June of 2002. He had been residing at the Montana Rescue Mission, a shelter in Billings. He left the shelter in June of 2002 and became homeless. He did not inform the appropriate authorities he was no longer staying at the shelter.

¶11    In August 2002, the State charged Samples with failure to register as a sexual offender, in violation of § 46-23-507, MCA (2001). Samples initially pled not guilty and counsel was appointed to represent him. However, Samples filed a *pro se* petition in the District Court arguing the 2001 Act was unconstitutional on a variety of grounds. The

3

District Court denied this petition. Samples subsequently pled guilty to the charge, reserving the right to appeal the District Court's denial of his *pro se* petition. On appeal, this Court concluded that the District Court should have addressed each of the constitutional issues raised in Samples's petition and thus remanded the matter for reconsideration. *State v. Samples*, 2005 MT 210, ¶ 15, 328 Mont. 242, ¶ 15, 119 P.3d 1191, ¶ 15 (*Samples I*).

¶12 On remand, Samples, with the assistance of counsel, filed an amended petition challenging the constitutionality of the Act as it was applied to him. The District Court again dismissed his petition. Samples now appeals.

## STANDARD OF REVIEW

Samples's petition is essentially a motion to dismiss. A district court's ruling on a motion to dismiss is a question of law, which we review de novo to determine whether it is correct. *Samples I*, ¶ 8.

¶13 Questions of constitutional law are subject to plenary review by this Court. *State v. Webb*, 2005 MT 5, ¶ 9, 325 Mont. 317, ¶ 9, 106 P.3d 521, ¶ 9. All statutes are presumed to be constitutional, and we will construe a statute so as to avoid an unconstitutional interpretation whenever possible. *Hernandez v. Bd. of Cty. Commrs.*, 2008 MT 251, ¶ 15, 345 Mont. 1, ¶ 15, 189 P.3d 638, ¶ 15. A statute may be held unconstitutionally vague in violation of due process if it is void on its face or if it is unconstitutional "as-applied" to the situation at hand. *State v. Knudson*, 2007 MT 324, ¶ 16, 340 Mont. 167, ¶ 16, 174 P.3d 469, ¶ 16.

## DISCUSSION

4

¶14 *Issue 1: Is the provision of the 2001 Act requiring an offender to report a change of residence void for vagueness?*

¶15 As noted above, a statute may be challenged as violative of the right to due process for its vagueness on two different bases: (1) the statute is so vague that it is void on its face; or (2) the statute is vague as applied in a particular situation. The void-for-vagueness doctrine requires a criminal statute to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *State v. Turbiville*, 2003 MT 340, ¶ 18, 318 Mont. 451, ¶ 18, 81 P.3d 475, ¶ 18 (citing *State v. Britton*, 2001 MT 141, ¶¶ 5-6, 306 Mont. 24, ¶¶ 5-6, 30 P.3d 337, ¶¶ 5-6.

¶16 A statute that fails to meet this standard is void for vagueness. The statute need not provide "perfect clarity and precise guidance" but it must give a person fair notice that his conduct is forbidden. *State v. Leeson*, 2003 MT 354, ¶¶ 11, 15, 319 Mont. 1, ¶¶ 11, 15, 82 P.3d 16, ¶¶ 11, 15 (citations omitted). To prove a statute is vague on its face, a party must show it is impermissibly vague in all of its applications. *State v. Dixon*, 2000 MT 82, ¶ 18, 299 Mont. 165, ¶ 18, 998 P.2d 544, ¶ 18. If a statute is "reasonably clear" in its application to the conduct of the person challenging the statute, it is not void for vagueness. *Dixon*, ¶ 20 (citations omitted). Although the Sexual Offender Registration Act may not constitute a criminal statute, we have previously extended the void-for-vagueness rules for criminal statutes specifically to § 46-23-505, MCA (2005). *Knudson*, ¶ 18.

¶17 Section 46-23-505, MCA (2001), states:

5

> If an offender required to register under the part changes residence, the offender shall within 10 days of the change give written notification of the new address to the agency with whom the offender last registered.

Samples argues this statute is both void on its face and as applied to him because it did not give him fair notice that he needed to update his registration when he left the Montana Rescue Mission and became homeless.

¶18     The statute uses clear language which gives fair notice to offenders that they are required to update their registration when they change their residence. Section 46-23-505, MCA (2001), is not vague on its face because it states with "sufficient definiteness" what offenders must do to maintain their registration. *State v. Stanko*, 1998 MT 321, ¶ 21, 292 Mont. 192, ¶ 21, 974 P.2d 1132, ¶ 21. We conclude that § 46-23-505, MCA (2001), is not void for vagueness on its face.

¶19     The statute is also not void for vagueness as applied to Samples. It is "reasonably clear" the statute applied to him when he left the shelter and became homeless. *Dixon*, ¶ 20. Section 46-23-505, MCA (2001), requires an offender to report to law enforcement agencies within 10 days when he "changes residence." In this case, Samples ceased residing at the Montana Rescue Mission on June 14, 2002, when he left the shelter. He himself states that he left the rescue mission and became homeless. He changed his residence when he admittedly left the shelter. The statute gave Samples "fair notice" that he was required to inform authorities when he left the shelter and went to live elsewhere. *Leeson*, ¶¶ 11, 15.

¶20     In *Knudson*, we held that the word "address" rendered the statute vague as applied to the defendant because it could be interpreted as either requiring him to name a residential

6

address or a mailing address, and he could not then reasonably know that he was in violation of the law when he advised law enforcement that he left his previous residence and that his new address was a post office box. Knudson, ¶¶ 25, 29, 30. In this case, Samples failed to notify the appropriate authorities that he had changed his residence. Had Samples notified the authorities he had changed his residence by leaving the shelter and said he was homeless living on the streets of Billings, perhaps *Knudson* would apply. However, since Samples failed to inform the authorities he "change[d] residence," and the language of the statute is clear on its face, § 46-23-505, MCA, is not void-for-vagueness as applied to Samples.

¶21   *Issue 2: Does the provision of the 2001 Act requiring an offender to report a change of residence demonstrate Samples did not commit a crime?*

¶22   Samples argues he committed no crime because he was homeless and thus had no new residence to report. However, as stated above, he changed his residence when he left the shelter and was required to report that change by § 46-23-505, MCA (2001). He did not report to the authorities that he was no longer at the shelter and he did not report that he was then living on the streets of Billings. Thus, he violated § 46-23-507, MCA (2001), as he did not keep his registration current.

¶23   *Issue 3: Did the 1999 Act as applied to Samples deprive him of his constitutional right to due process of law because the DOC set his sexual offender risk level without notifying him or giving him an opportunity to contest the designation?*

7

¶24 Section 46-23-509(5), MCA (1999), provided, if a judge does not set a sexual offender's risk level, "the [DOC] shall designate the offender as level 1, 2, or 3 when the offender is released from confinement."

¶25 All offenders, regardless of risk level, are required to maintain their registration with law enforcement officials. Level 1 and 2 offenders are required to update their registration yearly, and level 3 offenders must update their registration every 90 days. Section 46-23-504(4), MCA (1999). Offenders are also required to update their registration with the appropriate authorities any time they change residence. Section 46-23-505, MCA (1999). All offenders are required to maintain their registration for life, although, after ten years, if certain conditions are met, offenders may petition to be released from the registration requirements. Section 46-23-506(3), MCA (1999).

¶26 Samples argues that § 46-23-509(5), MCA (1999), violated his right to procedural due process because DOC designated him a level 3 offender upon his release from prison without notice, a hearing, or an opportunity to contest the designation.

¶27 Both the Fourteenth Amendment of the United States Constitution and Article II, Section 17, of the Montana Constitution guarantee that no one shall be deprived of life, liberty, or property without due process of law. Due process includes both a procedural and a substantive component. In this case, we focus on the procedural component.

¶28 Procedural due process is required if a party makes a showing that a property or liberty interest exists. *State v. Egdorf*, 2003 MT 264, ¶ 19, 317 Mont. 436, ¶ 19, 77 P.3d 517, ¶ 19. If there is a property or liberty interest at stake, procedural due process requires

8

that a person "must be given an opportunity to explain, argue and rebut any information that may lead to a deprivation of life, liberty, or property." *Webb*, ¶ 19 (citing *State v. McLeod*, 2002 MT 348, ¶ 18, 313 Mont. 358, ¶ 18, 61 P.3d 126, ¶ 18).

¶29 We have not directly addressed whether Montana's sexual offender registration laws implicate a life, liberty, or property interest. However, several other states with similar laws have addressed the issue. For example, the Iowa Supreme Court concluded "[a] liberty interest is at stake whenever a sex offender risk assessment is conducted." *Brummer v. Iowa Dept. of Corrects.*, 661 N.W.2d 167, 175 (Iowa 2003). The *Brummer* Court reasoned as follows:

> [T]he risk of an erroneous assessment and the associated opprobrium arising from such an assessment implicate a liberty interest protected by the Due Process Clauses. We are mindful that a record of conviction for a sex offense is a public record readily accessible, under statutory guidelines, to the general populace . . . . However, sex offender risk assessment and the resulting public notification go far beyond the mere redisclosure of an offender's conviction. Instead, a Corrections agent takes the additional step of assessing an offender based on a limited documentary record . . . . Then, after completing the assessment and notifying an offender of the results, and pending limited appellate procedures, the individual's status as a convicted sex offender *together with* an additional classification of his risk to reoffend, can be transmitted, in varying extent and degree, to different members of the public. This entire process clearly implicates a liberty interest in that it threatens the impairment and foreclosure of the associational or employment opportunities of persons who may not truly pose the risk to the public that an errant risk assessment would indicate . . . .

*Brummer*, 661 N.W.2d at 174-75.

¶30 The Oregon Supreme Court relied on similar reasoning in concluding that the determination that a person is a predatory sex offender implicates a liberty interest,

9

reasoning, when an agency gathers and synthesizes evidence in making such a determination, the interest of the person to be labeled goes beyond mere reputation. It is an interest in avoiding ostracism, loss of employment opportunities, also such a designation likely involves verbal or even physical harassment. *Noble v. Bd. of Parole & Post-Prison Supervision*, 964 P.2d 990, 995-96 (Or. 1998); s*ee also Hawai'i v. Guidry*, 96 P.3d 242, 250 (Haw. 2004) (holding that lifetime registration requirements for sexual offenders implicate a liberty interest and require due process protections).

¶31 The cases from other jurisdictions cited by the parties in which there is no liberty interest implicated in sexual offender registration requirements are inapposite. *See Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997) (concluding that Washington's registration law did not deny sexual offenders due process because there is no privacy interest in the information disseminated and, thus, no liberty interest); *Conn. Dept. of Pub. Safety v. Doe*, 538 U.S. 1, 7, 123 S. Ct. 1160, 1164 (2003) (noting no procedural protections were necessary because in Connecticut the registration requirements turn on an offender's conviction alone and no other facts are relevant or affect the registration).

¶32 In the context of a criminal sentence in Montana, it is not the duration or severity of a sentence that might render it constitutionally invalid; it is the imposition of a sentence based on a foundation which may be extensively and materially false, and which the prisoner had no opportunity to correct that can deny the defendant due process of law. *McLeod*, ¶ 19; *State v. Herman*, 2008 MT 187, ¶ 21, 343 Mont. 494, ¶ 21, 188 P.3d 978, ¶ 21; *State v. Rosling*, 2008 MT 62, ¶ 70, 342 Mont. 1, ¶ 70, 180 P.3d 1102, ¶ 70.

¶33 We agree with those jurisdictions that have concluded there is a liberty interest at stake when a person is designated as a particular risk level under the Act. Unlike the law at issue in *Connecticut Department of Public Safety*, the designation of a risk level does not turn on an offender's conviction alone. *Conn. Dept. of Pub. Safety*, 538 U.S. at 7, 123 S. Ct. at 1164. In Montana, facts other than conviction are used to make the designation, and the designation leads to varying requirements for an offender. This Court determined in *State v. Mount*, 2003 MT 275, ¶ 89, 317 Mont. 481, ¶ 89, 78 P.3d 829, ¶ 89, that the Act is non-punitive and functions as a regulatory measure to assist law enforcement and protect the public. Still, the Act places a burden on offenders to update their registration or face criminal sanctions. The extent of that burden depends on their offense risk level. For example, a level 3 offender must complete a registration verification form every 90 days, while a level 1 or level 2 offender must verify annually. Section 46-23-504(4), MCA (1999). Acting pursuant to § 46-23-509(5), MCA (1999), DOC set Samples's risk level based on information unknown to him, and he had no chance to argue for a lesser risk level designation. The risk of an erroneous assessment and the associated opprobrium arising from such an assessment implicate a liberty interest protected by Article II, Section 17, of the Montana Constitution. *See Brummer*, 661 N.W.2d at 174. We conclude that Samples was denied his right to due process of law when DOC designated him a level 3 sex offender, because he did not have the opportunity to know what information was used to designate his risk level, he had no right to contest that information, and he had no ability to argue for a different designation. Therefore, we must remand so Samples has the "opportunity to

11

explain, argue and rebut any information" used in the designation of his sexual offender risk level. *Webb*, ¶ 19.

¶34     Nevertheless, our determination that Samples's designation as a level 3 offender violated his right to procedural due process does not affect his conviction for failing to file notice of his change of address. Section 46-23-505, MCA (2001), which Samples violated requires all offenders "give written notification of the new address to the agency with whom the offender last registered." This requirement does not vary based on offender level; all offenders must comply. Thus, even were Samples's designation to change on remand, he remains convicted of failure to register as a sex offender.

**CONCLUSION**

¶35     Samples's 2003 conviction for failure to register as a sex offender is affirmed. Samples's 2001 level 3 sex offender designation is vacated, and this matter is remanded to the District Court for a hearing to appropriately determine Samples's sex offender level.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS